Cherico v Cherico (2023 NY Slip Op 06427)

Cherico v Cherico

2023 NY Slip Op 06427

Decided on December 14, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 14, 2023

CV-23-0174
[*1]Amber M. Cherico, Plaintiff,
v
Robert A. Cherico, Appellant.

Calendar Date:October 17, 2023

Before:Garry, P.J., Lynch, Reynolds Fitzgerald and Fisher, JJ.

Law Offices of Gerard V. Amedio, PC, Saratoga Springs (Gerard V. Amedio of counsel), for appellant.

Lynch, J.
Appeal from an order of the Supreme Court (Michael R. Cuevas, J.), entered January 23, 2023 in Schenectady County, which denied defendant's motion to vacate an award of maintenance in the parties' judgment of divorce.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were divorced in 2021 after nine years of marriage. The judgment of divorce awarded the parties joint legal custody of their two children (born in 2015 and 2017), with primary physical custody to the wife. Pertinent here, the May 2021 "Opting-Out" agreement, incorporated but not merged into the judgment of divorce, required the husband to pay the wife $1,050 per month in maintenance for a period of 60 consecutive months. Under the agreement, that obligation would terminate early upon certain specified events, including the wife's establishment of a relationship with another individual that is "tantamount to [one] contemplated by [Domestic Relations Law § 248]" — i.e., a marital-type relationship where the wife habitually lives with someone else and holds herself out to be that person's spouse.
In September 2022, the husband moved by order to show cause to terminate the maintenance award, alleging that the wife had entered into a relationship with another man, triggering the Domestic Relations Law § 248 provision. The husband maintained that the wife had been living with the other man for approximately one year, and had purchased a home with him. He further alleged that the wife had read a co-parenting book with the other man, directed the parties' children to refer to him as their stepfather and that she and the children were living with the other man "as a family unit."
In opposition, the wife submitted an affidavit in which she denied holding the other man out to be her spouse, stating that she does not refer to him as the children's stepfather, does not refer to him as her husband and does not use his surname in any capacity. The wife also explained that the other man maintains a separate property where he continues to receive mail and keeps most of his personal belongings. She emphasized that she was not engaged to be married to the other man, did not wear a wedding ring, had never filed joint income tax returns and maintained separate health insurance. The exhibits annexed to the wife's opposition papers included copies of her driver's license, the mortgage note pertaining to her residence, certain bank account statements and a 2021 tax form. The wife's maiden name is listed on all of these documents, and the other man is not listed on her bank account statements or tax documents.
After giving the husband an opportunity to submit a written offer of proof further "detailing what witnesses and documentary evidence he would present" at a potential hearing, Supreme Court ultimately denied the husband's application without a hearing, finding that his offer of proof was insufficient to establish a triable issue of fact as to whether the wife was in a relationship [*2]tantamount to one contemplated in Domestic Relations Law § 248.[FN1] The husband appeals, and we affirm.
The question presented is whether the wife's relationship with the other man is "tantamount to [one] contemplated by" Domestic Relations Law § 248, triggering an early termination of the maintenance award. Under Domestic Relations Law § 248, a court may, in its discretion, annul a maintenance award "upon proof that the payee is habitually living with another person and holding himself or herself out as the spouse of such person" (accord Campello v Alexandre, 155 AD3d 1381, 1383 [3d Dept 2017]). "The statutory language clearly mandates discrete findings of cohabitation and holding out" (Matter of Bliss v Bliss, 66 NY2d 382, 389 [1985]). The "statutory holding out requirement" necessitates "more than proof that two individuals 'conform to the life style of a married couple' " (Campello v Alexandre, 155 AD3d at 1383, quoting Northrup v Northrup, 43 NY2d 566, 572 [1978]; see Matter of Bliss v Bliss, 66 NY2d at 387). "In addition to the evidence that establishes cohabitation, the statute further requires separate proof that a payee spouse and another individual held themselves out as spouses. This proof need not establish that a payee spouse has expressly claimed to be married, but there must be evidence of 'some assertive conduct' that goes beyond sharing a residence" (Campello v Alexandre, 155 AD3d at 1383, quoting Northrup v Northrup, 43 NY2d at 571). "As illustrative examples, the Court [of Appeals in Northrup] noted that the statutory requirement might be satisfied by such conduct as asking to be listed in a telephone directory as a spouse under the other individual's surname, or changing the payee spouse's name on a joint checking account to use the other individual's surname" (Campello v Alexandre, 155 AD3d at 1383). Significantly, the Court elaborated that "[t]hese examples are not meant to suggest a limitation on the type of proof required, but simply to illustrate the types of conduct which might demonstrate a holding out" (Northrup v Northrup, 43 NY2d at 571).
On this record, we find no error in Supreme Court's denial of the husband's motion without a hearing. Although there are certain factual disputes regarding the pertinent details of the wife's living situation with the other man, evidence of cohabitation and comingling of resources does not establish that the wife is holding the other man out to be her spouse (see Northrup v Northrup, 43 NY2d at 571; Matter of Casey v Casey, 180 AD3d 677, 678 [2d Dept 2020]; Campello v Alexandre, 155 AD3d at 1383; Florio v Florio, 25 AD3d 947, 950 [3d Dept 2006]). The fact that the other man is listed on the deed to the wife's residence does not reflect a holding out for the wife took title in her own name as a tenant in common, not as tenants by the entirety. By definition, each cotenant has a separate and distinct legal interest in the property (see 7 Warren's Heaton on Surrogate's Court Practice § 92[*3].06 [3] [7th ed]). By comparison, "[a] tenancy by the entirety is created when there is a disposition of real property to a husband and wife, without an express declaration that it is to be held in another form of co-ownership" (7 Warren's Heaton on Surrogate's Court Practice § 92.06 [3] [7th ed]). Despite the husband's assertion that the children referred to the other man as a second father, there was no evidence offered that the wife encouraged them to do so. The wife acknowledged reading a co-parenting book with the other man to learn better parenting skills but that in no way reflects a holding out of a spousal relationship. In our view, the husband failed to proffer any viable "evidence that the wife had ever used [the other man's] surname nor any other conduct by the wife, either through direct action or by implication, indicating that she ever wished anyone to believe that she was married to [the other man]" (Campello v Alexandre, 155 AD3d at 1383 [internal quotation marks, brackets and citation omitted]; compare Matter of Paul S. v Roberta S., 91 Misc 2d 211, 212 [Family Ct, Queens County 1977]). As such, Supreme Court did not err in denying his motion without a hearing (see Szemansco v Szemansco, 11 AD3d 787, 788 [3d Dept 2004]; Kennedy v Kennedy, 256 AD2d 1048, 1050 [3d Dept 1998]; Mastrogiacomo v Mastrogiacomo, 133 AD2d 671, 671 [2d Dept 1987]).
The husband asks us to apply more "modern" factors to the holding-out requirement than those listed in Northrup, emphasizing that many spouses in today's society keep their maiden names and that changing the names on a bank account is not easily achievable. As a starting point, we take note that the parties were certainly free to craft a different standard for defining a maintenance termination event, but contracted to utilize the Domestic Relations Law § 248 statutory standard. That said, the factors set forth in Northrup were "not meant to suggest a limitation on the type of proof required" (43 NY2d at 571; see Matter of Bliss v Bliss, 66 NY2d at 388), and Northrup imposes no temporal limitation on what constitutes a holding out as spouses in today's society. Our decision is not confined to the factors specifically listed in Northrup, but based upon the totality of the evidence presented. Likewise, we reject the husband's argument that Supreme Court erred in rendering its decision without the benefit of the bank, Spectrum and National Grid records that were the subject of the judicial subpoenas. Even assuming these records show what the husband claimed they would — i.e., a commingling of finances and Internet/utilities accounts in the other man's name — this does not establish the strict — if antiquated — holding-out requirement of Domestic Relations Law § 248, which the parties specifically adopted within their agreement (see Northrup v Northrup, 43 NY2d at 571; Campello v Alexandre, 155 AD3d at 1383; Florio v Florio, 25 AD3d at 950). The husband's remaining contentions, to the extent not specifically [*4]addressed herein, have been considered and found unavailing.
Garry, P.J., Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Before issuing its determination, Supreme Court signed judicial subpoenas for certain documents pertaining to the wife's and the other man's bank records, along with their Spectrum and National Grid accounts, which the husband claimed would prove the holding out requirement of Domestic Relations Law § 248. The court also preliminarily scheduled a hearing on the husband's application, but ultimately determined that no hearing was necessary and rendered its determination before the scheduled hearing date.